NOT RECOMMENDED FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:09-CV-100-KKC

MARTAY LOVE                                                      PLAINTIFF

VS:                        **MEMORANDUM OPINION AND ORDER**

MS. T. WARD, et al.                                             DEFENDANTS

**** **** ****

Martay Love, a/k/a Marty Love and Martay Loveley, a Federal Bureau of Prisons ("BOP") inmate who is currently confined in the Federal Medical Center ("FMC"), in Lexington, Kentucky, has filed a *pro se* Complaint pursuant to 28 U.S.C. § 1331 and the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), together with a Motion to Proceed *in forma pauperis*. The Motion has been granted by separate Order.

This is the second civil rights lawsuit which the Plaintiff has filed making the same claims and naming the same Defendants. His prior one was *Love v. Ward*, Lex. No. 08-CV-379-KSF, filed on September 19, 2008. However, on November 13, 2008, that case was dismissed, *sua sponte*, without prejudice, for lack of prosecution, *i.e.*, Love's failure to make timely payment of the District Court filing fee. Therefore, his claims have never been screened until now.

The second, although not identical, Complaint is now before the Court for initial screening. 28 U.S.C. § 1915; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997). In the Court's screening, as with all pleadings submitted by *pro se* litigants, the pleading is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th

Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). During screening, the

allegations of the *pro se* litigant are taken as true and liberally construed in his favor. *Urbina v.*

*Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). However, the Court must dismiss a case at any time if

it determines the action is frivolous, malicious, or fails to state a claim upon which the Court may

grant relief. 28 U.S.C. § 1915(e)(2)(B).

## CLAIMS

Referring to 18 U.S.C. §§ 3663A and 3664, *inter alia*, Plaintiff claims that the

Defendants have demanded his participation in the BOP's Inmate Financial Responsibility

Program ("IFRP") for installment payments of his court-ordered restitution. Allegedly, this (1) is

contrary to the directions of the Court in his Judgment of Conviction regarding payment of

restitution; and (2) has been done without the BOP's having been granted statutory or other

authority to impose such payments. Further, (3) the Defendants have retaliated against him for

not participating by putting him in "refuse status," a classification which means the loss of

certain privileges at the prison.

## DEFENDANTS

As the Defendants, Plaintiff names the following members of his Unit Team at the FMC-

Lexington: Unit Manager Ms. T. Ward; Unit Manager Mr. K. Coleman; Case Manager Mr. T.

Baker; and Counselor Mr. S. Young. He also speaks of their, "proffessional [sic] and personal

capacity."

## RELIEF REQUESTED

Plaintiff demands damages and a correction of his custody classification.

**FACTUAL ALLEGATIONS**

Plaintiff has submitted a mix of pages from a commonly used complaint form and attached extra pages and exhibits.  The following is a summary or construction of his allegations in these documents.  Record No. 2.

Love gives no background about his conviction or sentence.  His facts begin with allegations related to events occurring after his arrival at FMC-Lexington.  He alleges that he has been in BOP custody for over five years, but never had a problem with paying his court-ordered restitution until he came to the Lexington facility.  He attaches a copy of an agreement which he signed on April 27, 2007, agreeing to pay $25.00 per quarter through the IFRP toward his financial obligations.

Plaintiff states that he came to the Lexington facility in order to participate in a BOP 500-hour Residential Drug Abuse Program ("RDAP") and to work in the prison's Unicor industries.  He agreed to the IFRP payment at that time only because he had the Unicor job, the income from which was used to make the payments.  However, Plaintiff claims that participation in both of them was too much for him, "with my disability."  He evidently quit the work first, was later released from participation in the RDAP, and then claimed that he did not have the money to pay the IFRP amount agreed-upon.

Plaintiff purportedly explained to the Defendant Unit Team members at that time and now alleges to this Court that he is not required to participate in the IFRP because his Judgment of Conviction contains the sentencing court's provisions for his making periodic payments toward the restitution debt.  He attaches the Judgment's page six (6), which includes a heading titled "Special instructions regarding the payment of criminal monetary penalties," under which

there are two paragraphs.  The first of these paragraphs appears to have been inserted in the

Judgment form and the second appears to be pre-printed on the form:

> $100,987.92 in Restitution is due immediately. But, if the defendant is not able to pay the full amount immediately, then restitution shall be paid in monthly installments of at least $200.00 with payments to commence no later than 30 days after the defendants release from imprisonment.

> Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of imprisonment payment of criminal monetary penalties shall be due during the period of imprisonment.  All criminal monetary penalty payments, except those payment made through the Bureau of Prisons' Inmate Financial Responsibility Program are to be made as directed by the court, the probation officer, or the United States attorney.

Exhibit II.

Plaintiff started two administrative remedies seeking to cancel all IFRP participation and

asking to have all earlier-paid monies refunded to him.  The first of these efforts, Remedy No.

471505, was  clearly exhausted, as he provides response of the BOP's National Office; the

second, No. 478751, was labeled redundant by the BOP, and it is unclear whether it was

exhausted, as the Plaintiff provides no response from the National Office.[1]  At the final level of

appeal in the exhausted proceeding, the Administrator for National Inmate Appeals wrote in

pertinent part as follows:

> . . .  Program Statement 5380.07, Financial Responsibility Program (IFRP), establishes the procedure by which an inmate may make efforts toward meeting their criminal monetary penalties and legitimate financial obligations.   Payment amounts are based on a formula contained within this Program Statement.  The courts have upheld the authority of the Bureau of Prisons to collect court-ordered

---

[1]  The Court takes judicial notice of the administrative remedy documents from both procedures, some being attached to the instant Complaint, while others, including the one rejecting Plaintiff's claim at the highest level of appeal, are attached to the Complaint in Love's prior action, *Love v. Ward*, 08-CV-379-KSF, attachments to docket entries 2-4.  The documents suggest that in the time between the two administrative efforts, the Plaintiff decided to end his IFRP participation.

-4-

financial obligations through the IFRP and have continually held that procedures are lawful and Constitutional.

When you were sentenced, the court imposed a $100 assessment and restitution in the amount of $100,987.92. These criminal monetary penalties were ordered due immediately. Given this, you should participate in the IFRP. Inmate participation in the IFRP is completely voluntary, but failure to make satisfactory progress toward meeting financial obligations may result in the limitation of certain privileges reflective of a demonstration of poor responsibility.

Attachment to Lex. No. 08-CV-379-KSF, dated March 18, 2008. Consistent with the Plaintiff's allegations and the BOP's position, when Love ceased his participation in the IFRP, the Unit Team put him in "IFRP refuse" status, thereby costing him privileges. One year later, on March 26, 2009, he initiated the instant civil action for injunctive relief with regard to his status and for damages.

## DISCUSSION

The Plaintiff has asserted that his trial court's Judgment should excuse him from the requirement to pay restitution through the BOP's IFRP, and it appears that the BOP's administrative process has been exhausted. Therefore, the Court shall summon the Defendants to answer Love's Complaint. Additionally, as Love has been granted *pauper* status, an Officer of the Court will serve process on his behalf pursuant to FED. R. CIV. P. 4(c)(2) and 28 U.S.C. § 1915(d). The Clerk's Office and the Office of the United States Marshal ("USM Office"), therefore, will be directed to serve the summons and Complaint as set forth below.

Accordingly, the Court being advised, it is **ORDERED** as follows:

1.      The named Defendants in this action are Ms. T. Ward; Mr. K. Coleman; Mr. T. Baker; and  Mr. S. Young, all located at FMC-Lexington, in Lexington, Kentucky.

      2.      A Deputy Clerk of the Court shall prepare the documents necessary for service of process upon the following Defendants, *in both their individual and official capacities*:

        a.     Ms. T. Ward;

        b.     Mr. K. Coleman;

        c.     Mr. T. Baker; and

        d.     Mr. S. Young.

      3.      For each Defendant, the Deputy Clerk in Lexington shall prepare a "Service Packet" consisting of the following documents:

        a.     the necessary completed summons forms, pursuant to Fed. R. Civ. P. 4;

        b.     the Complaint and all attachments [Record No. 2];

        c.     this Order; and

        d.     a completed USM Form 285.

If the Clerk is unable to fully and accurately complete any of the documents described above, the Clerk shall set forth the reason in a docket entry.

      4.      Additionally, the Clerk of the Court shall make three sets of copies of the above-described documents, each set containing the following

        a.     copies of all completed summons forms issued for the named  Defendants;

        b.     copies of all completed USM Forms 285;

        c.     one copy of the Complaint and all attachments [Record No. 2]; and

        d.     one copy of this Order.

5.      Service of process on each Defendant shall be directed as follows:

     a.      Service upon Defendant T. Ward shall be made by providing the USM Office in Lexington, Kentucky with a Service Packet to be personally served upon Ward at the FMC-Lexington, in Lexington, Kentucky, through arrangement with the Federal Bureau of Prisons.

     b.      Service upon Defendant K. Coleman shall be made by providing the USM Office in Lexington, Kentucky with a Service Packet to be personally served upon Coleman at the FMC-Lexington, in Lexington, Kentucky, through arrangement with the Federal Bureau of Prisons.

     c.      Service upon Defendant T. Baker shall be made by providing the USM Office in Lexington, Kentucky with a Service Packet to be personally served upon Baker at the FMC-Lexington, in Lexington, Kentucky, through arrangement with the Federal Bureau of Prisons.

     d.      Service upon Defendant S. Young shall be made by providing the USM Office in Lexington, Kentucky with a Service Packet to be personally served upon Young at the FMC-Lexington, in Lexington, Kentucky, through arrangement with the Federal Bureau of Prisons.

6.      Service of the named Defendants must be completed by serving the copies described in the above paragraph (4) *by certified or registered mail* to:

     a.      one set of the copies to the Civil Process Clerk at the Office of the United States Attorney for the Eastern District of Kentucky;

     b.      one set to the Office of the Attorney General of the United States in Washington, D.C.; and

     c.      one set to the Office of the Federal Bureau of Prisons in Washington, D.C.

7.      The Lexington Deputy Clerk shall hand-deliver the Service Packets for each identified Defendant and the three sets of copies to the USM Office in Lexington, Kentucky, and shall obtain a delivery receipt from the USM Office.

The Deputy Clerk shall enter the delivery receipt into the record and note in the docket the date that the Service Packets and copies was delivered to the USM Office.

8.     The USM Office shall serve a Service Packet upon each identified Defendant in the manner described in Step 5, above, and shall serve the three sets of copies in the manner described in Step 6, above.

The USM Office is responsible for ensuring that each Defendant is successfully served with process.  In the event that an attempt at service upon a Defendant is unsuccessful, the USM Office shall make further attempts and shall ascertain such information as is necessary to ensure successful service.

9.     Within 40 days of the date of entry of this Order, the USM Office shall send a Service Report to the Clerk's Office, which the Deputy Clerk shall file in the record, which states whether service has been accomplished with respect to each identified Defendant.

      a.    For each set to be served by certified mail, the Service Report shall include:
          i.    a copy of the green card showing proof of service; or
          ii.    a statement that the green card was not returned from the U.S. Postmaster, along with a "Track-and-Confirm" report from the U.S. Postal Service showing that a proof of delivery does not exist.

      b.    For each Defendant to be personally served, the Service Report shall indicate:

          i.    that the Defendant was successfully served personally, or
          ii.    a statement explaining what efforts are being taken to locate the Defendant and accomplish personal service.

10.     The Plaintiff shall immediately advise the Clerk's Office of any change in his current mailing address.  ***Failure to do so may result in dismissal of this case***.

11.     The Plaintiff must communicate with the Court ***solely*** through notices or motions filed with the Pikeville Clerk's Office.  ***The Court will disregard correspondence sent directly to the judge's chambers.***

-8-

12.     With every notice or motion filed with the Court, the Plaintiff **must**:

     a.     mail a copy to each Defendant (or his or her attorney); and

     b.     at the end of the notice or motion, certify that he has mailed a copy to each Defendant (or his or her attorney) and the date on which this was done. ***The Court will disregard any notice or motion which does not include this certification.***

Dated this 21st day of April, 2009.

**Signed By:**

**_Karen K. Caldwell_**

**United States District Judge**